**Glenda Lee BEWLEY, Appellant,**

v.

**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellee.**

No. 5898.

Court of Civil Appeals of Texas, Waco.

June 29, 1978.

Rehearing Denied July 20, 1978.

Bill Vannatta, Clark & Vannatta, Waco, for appellant.

Louis S. Muldrow, Naman, Howell, Smith, Lee & Muldrow, Waco, for appellee.

HALL, Justice.

This is a suit for workmen's compensation brought by Glenda Lee Bewley against Texas Employers Insurance Association, compensation insurance carrier for plaintiff's employer, Gibson's Discount Center, Waco, Texas. Plaintiff's claim was based upon a cold, sore throat, and pneumonia resulting from exposure to water and inclement weather suffered by her in the course of her employment.

After plaintiff's deposition was taken, defendant moved for summary judgment asserting plaintiff's illnesses were nothing more than diseases and infirmities to which the general public is subjected and exposed, and, as a matter of law, do not constitute a compensable injury under our workmen's compensation laws. Plaintiff answered the motion contending that questions of fact were raised as to whether she had suffered a compensable occupational disease and physical injury. The motion was granted, and judgment was rendered that plaintiff take nothing.

Plaintiff brought this appeal asserting in her single point of error that certain fact questions are raised in the record which preclude disposition of the case by summary judgment. We overrule plaintiff's contentions and affirm the judgment.

Resolution of the parties' rights and liabilities requires construction and application of the pertinent parts of § 20 of Article 8306, which provide as follows:

Wherever the terms "Injury" or "Personal Injury" are used in the Workmen's Compensation Laws of this State, such terms shall be construed to mean damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom. The terms "Injury" and "Personal Injury" shall also be construed to mean and include "Occupational Diseases," as hereinafter defined. Whenever the term "Occupational Disease" is used in the Workmen's Compensation Laws of this State, such term shall be construed to mean any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body and such other diseases or infections as naturally result therefrom . . . Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where such diseases follow as an incident to an "Occupational Disease" or "Injury" as defined in this section.

The statute sets forth and defines two general categories of compensable injuries.

The first is defined as "damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom," which has been construed by our Supreme Court to mean an "accidental injury" resulting from an undesigned, untoward event traceable to a definite time, place and cause. *Olson v. Hartford Accident And Indemnity Company,* 477 S.W.2d 859 (Tex.Sup.1972). The second category of compensable injuries set forth in the statute is denominated "occupational disease," which is defined as "any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body and such other diseases or infections as naturally result therefrom." However, by reason of the proviso contained in the last sentence of the statute in question, "ordinary diseases of life" to which the general public is exposed outside of the employment are not compensable except where they follow as an incident to an occupational disease or accidental injury as defined in the statute.

The evidence shows that in the latter part of July, 1974, plaintiff began work as the only cashier inside a tent located on her employer's parking lot during a "tent sale." She worked eight hours each day, Monday through Saturday. In plaintiff's words, the tent "was kind of like a circus tent, a pole here and a pole here and then the top come over, and the sides were all down until it got hot, and sometimes they would raise them." When plaintiff began work at the tent sale, the temperature was 107 degrees outside the tent and 114 degrees inside it. Plaintiff worked at this job through Tuesday, August 27th. During most of the week beginning Monday, August 19th, rain fell steadily. The tent was located in a low place on the parking lot, and water flowed under the tent throughout the rain. At times, the water was so deep that plaintiff's feet were completely covered. Plaintiff was required by her employer to remain in the tent even though conditions were so bad all customers would leave the tent. She owned no rain gear and was supplied none by her employer. Her shoes "came apart"

**210**

and her feet "dried up like prunes." Additionally, when plaintiff went to and from the main store building her head sometimes got wet. Plaintiff's station as cashier was at the only entrance into the tent. When the wind was blowing plaintiff was required to close the tent door to keep the rain from blowing in. As a result of standing and working in the water and exposure to the inclement weather plaintiff developed a cold on Tuesday or Wednesday, August 20th or 21st, had a sore throat within a week, then began having difficulty breathing, and by September 20th her condition had progressed into pneumonia. Although not hospitalized, plaintiff was thereafter treated for her illness by a medical doctor for about six weeks and was disabled during that time.

It has been the uniform holding of the courts of our State that illnesses like cold, sore throat, and pneumonia resulting solely from exposure to rain, wind, wetting, and cold weather in the course of employment are not "personal injuries" or "diseases or infections as naturally result therefrom" within the meaning of the workmen's compensation statute, although the evidence in the cases showed that by reason of the employment the employee's exposure to the elements causing his illness was traceable to a definite time, place, and event, and was greater than the exposure of the public generally. *Texas Employers' Ins. Ass'n v. Jackson,* 265 S.W. 1027, 1029 (Tex.Com.App. 1924, judgment adopted); *Amann v. Republic Underwriters,* 100 S.W.2d 778, 780 (Tex. Civ.App.—Fort Worth 1937, no writ); *Cunningham v. Fidelity & Casualty Co. of New York,* 102 S.W.2d 1106, 1107 (Tex.Civ.App. —San Antonio 1937, writ dism.); *Aetna Casualty & Surety Co. v. Sparrow,* 122 S.W.2d 286, 288 (Tex.Civ.App.—Beaumont 1938, writ dism). Those decisions are to be distinguished from holdings which permit recovery for pneumonia, tuberculosis and other respiratory diseases which follow as the result of sudden, accidental inhalation of heavy volumes and concentrations of noxious gases, dust, metal filings or other foreign substances which cause damage to the lungs. See, *Maryland Casualty Co. v.*

*Rogers,* 86 S.W.2d 867 (Tex.Civ.App.— Amarillo 1935, writ ref.); *Barron v. Texas Employers' Ins. Ass'n,* 36 S.W.2d 464 (Tex. Com.App.1931); *Traders & General Ins. Co. v. Wright,* 144 S.W.2d 626 (Tex.Civ.App.— Eastland 1940, writ ref.); *Texas Employers' Ins. Ass'n v. Robison,* 241 S.W.2d 339 (Tex. Civ.App.—Dallas 1951, writ ref'd n. r. e.); *American General Ins. Co. v. Ariola,* 187 S.W.2d 585 (Tex.Civ.App.—Galveston 1945, writ ref. w. m.).

The case before us is factually in point with the *Jackson* and *Amann* cases, supra, in which claims for benefits under the workmen's compensation laws were denied. The claimant in each of those cases was repeatedly soaked by rain and chilled by winds over a two-day period in the course of his employment, resulting in cold, and then pneumonia. In the course of its holding, the court in *Jackson* said:

"Here we have an employe in the course of his employment getting wet. As a natural result of getting wet he contracted cold, and pneumonia resulted. While the disease was the natural result of getting wet, the mere getting wet was not a 'damage or harm to the physical structure of the body,' and, unless it was, it could not be said to be an 'injury' or 'personal injury,' for which compensation is allowed by the statute. For, before compensation may be had for the disease, it must be an 'injury' provided for by the statute, and it cannot be such 'injury' unless it naturally results from 'damage or harm to the physical structure of the body.'"

In *Amann,* the court cited the holding in *Jackson,* and said:

"It was not contemplated by the lawmakers that the law should cover health insurance. It is a matter of rather common knowledge that 'colds,' influenza and pneumonia are the result of bacteria—in common parlance, germs—attacking the body. These germs appear and cause epidemics in cities, towns, and counties. It is also a matter of rather common knowledge that many such germs appear to be in the very atmosphere surrounding us, at

all times. Any and every person is 'exposed' to them without being conscious of the fact. Medical science teaches that we fall victims of these germs because at the time of the attack we are not physically able to withstand their assaults.

"If this appellant can recover compensation under the facts pleaded, then every employee who is engaged in labor that actually tires the body and causes what the layman calls a 'run-down condition' can recover compensation by showing that his work weakened him and lowered his resistance and caused him to succumb to the attack of any disease, which he would otherwise have been able to resist."

The plaintiff in our case points to the fact that those cases were decided when no provision was made in our laws for compensation for occupational diseases. She argues, in effect, that fact questions are raised in the record as to whether her illness was an occupational disease. The term "occupational disease" in our workmen's compensation statutes has been construed by the courts to mean a disease which is contracted gradually in the course of an employment and as a commonly recognized incident of it, whose time and place of development are not susceptible of definite ascertainment. *Texas Employers' Ins. Ass'n v. McKay,* 146 Tex. 569, 210 S.W.2d 147, 150 (1948); *Solomon v. Massachusetts Bonding And Insurance Company,* 347 S.W.2d 17, 19 (Tex.Civ. App.—San Antonio 1961, writ ref'd). Plaintiff's illness does not fall within this definition. To the contrary, plaintiff's illness was an "ordinary disease of life to which the general public is exposed" which is not compensable under the statute under review unless it follows as an incident to a compensable occupational disease or accidental injury.

In *Bailey v. American General Insurance Company,* 154 Tex. 430, 279 S.W.2d 315, 318 (1955), the court restated the rule that in determining the meaning of the definition of injury contained in the Workmen's Compensation Statute the courts should be guided by the rule of construction that since the statute is remedial in its character "if there be any reasonable doubt which may arise in a particular case as to the right of the injured employee to compensation, same should be solved in favor of such right." Under the record before us it is undisputed that plaintiff contracted pneumonia in the course of her employment. In view of that fact we have diligently undertaken to find an intention on the part of the Legislature to provide compensation for plaintiff's disability, in compliance with the Supreme Court's direction that the Workmen's Compensation Act be liberally construed. Nevertheless, we cannot disregard the fact that the rights and obligations of the parties are controlled by the provisions of the Act. *Houston Fire & Casualty Ins. Co. v. Dieter,* 409 S.W.2d 838, 840 (Tex.Sup.1966). We have concluded that the constructions sought by plaintiff are not consonant with the law as written. For that reason we must, and do, affirm the summary judgment.