[Cite as *Yeager v. Arconic Inc.*, 2022-Ohio-1997.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| LEE W. YEAGER, | CASE NO. 2021-T-0052 |
| Appellant, | |
| - v - | Civil Appeal from the<br>Court of Common Pleas |
| ARCONIC INC., et al., | |
| Appellees. | Trial Court No. 2020 CV 01318 |

**O P I N I O N**

Decided: June 13, 2022
Judgment: Affirmed

*Michael D. Rossi*, Guarnieri and Secrest, 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Appellant).

*Kelly A. Johns*, Reminger Co., LPA, 11 Federal Plaza Central, Suite 1200, Youngstown, OH 44503; *Brianna M. Prislipsky*, Reminger Co., LPA, 101 West Prospect Avenue, Suite 1400, Cleveland, OH 44115-1093 (For Appellee, Arconic, Inc.).

*Dave Yost,* Ohio Attorney General, and *Scott W. Johnson*, Assistant Attorney General, 20 West Federal Street, 3rd Floor, Youngstown, OH 44503 (For Appellee, Bureau of Workers Compensation).

THOMAS R. WRIGHT, P.J.

{¶1}    In September 2020, a Staff Hearing Officer allowed Lee W. Yeager ("Yeager") the right to benefits under the Workers' Compensation Fund for "COVID-19 Infection Exposure" while working as a furnace operator for Arconic, Inc. ("Arconic"). The Industrial Commission declined to hear Arconic's appeal. Pursuant to R.C. 4123.512,

Arconic filed an administrative appeal in the Trumbull County Court of Common Pleas, and Yeager filed a complaint showing a cause of action to participate in the fund.

{¶2} Arconic moved for summary judgment on the bases that (1) "exposure" to COVID-19 is not a compensable diagnosis; (2) Yeager did not sustain a workplace injury; and (3) Yeager did not develop an occupational disease in the course of and arising out of his employment. Arconic relied primarily on the deposition testimony of Yeager's diagnosing physician and medical expert, Jung Kim, M.D. ("Dr. Kim"). Yeager responded in opposition, also relying on portions of Dr. Kim's testimony as well as his own affidavit.

{¶3} The trial court entered summary judgment in favor of Arconic, thereby disallowing Yeager from participating in the fund. The court found that no genuine issues of material fact remain based on the following:

> [Yeager's] expert, Dr. Kim, was deposed and opined that Plaintiff did not sustain an injury in the course of and arising out of employment. * * * In establishing an occupational disease allowance, general and actual causation cannot be established without medical expert testimony. *Walker v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 100759, 2014-Ohio-4208. Dr. Kim could not state to a reasonable degree of medical probability that Plaintiff's COVID-19 infection was an occupational disease incurred in the course of and arising out of employment.
>
> [Arconic's] expert, Dr. Dean Erickson, likewise opined that [Yeager] did not sustain an injury or occupational disease in the course of and arising out of employment with Arconic, Inc. on March 20, 2020.

{¶4} Yeager appeals, assigning the following error for review:

{¶5} "The trial court erred in entering summary judgment in favor of Defendant, Arconic, Inc."

2

Case No. 2021-T-0052

{¶6} "On appeal, we review a trial court's entry of summary judgment de novo, i.e., 'independently and without deference to the trial court's determination.'" *Superior Waterproofing, Inc. v. Karnofel*, 11th Dist. Trumbull No. 2017-T-0010, 2017-Ohio-7966, ¶ 19, quoting *Brown v. Cty. Commrs. of Scioto Cty.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993) and citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶7} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).

{¶8} "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. Rather, all doubts and questions must be resolved in the non-moving party's favor. Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn." *Meloy v. Circle K Store*, 11th Dist.

3

Portage No. 2012-P-0158, 2013-Ohio-2837, ¶ 6, citing *Dupler v. Mansfield Journal Co.,* 64 Ohio St.2d 116, 121, 413 N.E.2d 1187 (1980), *Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 359, 604 N.E.2d 138 (1992), and *Pierson v. Norfork Southern Corp.,* 11th Dist. Ashtabula No. 2002-A-0061, 2003-Ohio-6682, ¶ 36.

{¶9} Yeager's sole argument on appeal is that a genuine issue of material fact exists as to whether his COVID-19 infection is a compensable occupational disease because Dr. Kim's testimony was inconsistent or equivocal on this issue.

{¶10} R.C. 4123.54 provides, noting inapposite exceptions, that every employee who contracts an occupational disease in the course of employment is entitled to receive compensation. A disease is a compensable occupational disease when it satisfies the definition in R.C. 4123.01(F):

> "Occupational disease" means a disease contracted in the course of employment, which by its causes and the characteristics of its manifestation or the condition of the employment results in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in greater degree and in a different manner from the public in general.

The Supreme Court of Ohio set forth this definition as a three-prong test:

> (1) The disease is contracted in the course of employment;
>
> (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and
>
> (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally.

4

Case No. 2021-T-0052

*State ex rel. Ohio Bell Telephone Co. v. Krise*, 42 Ohio St.2d 247, 327 N.E.2d 756 (1975), syllabus.

{¶11} Yeager presented evidence that he may have contracted COVID-19 in the course of his employment. On March 20, 2020, Yeager worked alongside a coworker in a furnace pulpit for approximately half an hour. They were not wearing masks and did not have the ability to "socially distance." The coworker sought medical attention from the plant nurse during this shift and subsequently tested positive for COVID-19. Yeager was placed in quarantine the following day and began experiencing COVID-19 symptoms approximately one week later. Yeager avers that he tested positive for COVID-19 on March 28, 2020.

{¶12} In his affidavit, regarding the second and third requirements of "occupational disease," Yeager avers that COVID-19 is peculiar to his employment and that he was at greater risk of contracting COVID-19 than the general public because he was required to work in "close proximity" to the infected coworker. Assuming for the sake of argument that the "close proximity" averment is sufficient to create an issue of fact as to the second requirement, it is not sufficient to establish the third requirement, because "a common illness to which the general public is exposed" is not compensable as an occupational disease. *See, e.g., Ingram v. Conrad*, 4th Dist. Athens No. 01CA36, 2001 WL 1674105, *12 (Dec. 20, 2001) (pneumonia); *Mackell v. Armco, Inc.*, 5th Dist. Coshocton No. 01CA017, 2002 WL 1467775, *4 (June 24, 2002) (sleep deprivation). To conclude otherwise "would extend the workers' compensation laws beyond their intended purpose." *Ingram* at *12; *Mackell* at *4.

> "'It is not contemplated by the law makers that the law should
> cover health insurance. It is a matter of rather common

5

knowledge that "colds," influenza and pneumonia are the result of bacteria—in common parlance, germs—attacking the body. These germs appear and cause epidemics in cities, towns, and counties. It is also a matter of rather common knowledge that many such germs appear to be in the very atmosphere surrounding us, at all times. Any and every person is "exposed" to them without being conscious of the fact. Medical science teaches that we fall victims of these germs because at the time of the attack we are not physically able to withstand their assaults.'"

*Ingram* at \*12, quoting *Bewley v. Texas Employers Ins. Assoc.*, 568 S.W.2d 208, 210-211

(Tex.Civ.App.1978), quoting *Amann v. Republic Underwriters*, 100 S.W.2d 778

(Tex.Civ.App.1937).

**{¶13}** Dr. Kim, Yeager's medical expert, provided deposition testimony that indicates COVID-19 falls within this category as a common illness to which the general public is exposed. Dr. Kim testified as follows:

Q. So is his job different? Does he have a hazard or—

A. No.

Q. –is his job different than most of the employment in the country?

A. No, he's not. His job is very standard for, you know, casual workers.

Q. Okay. So can you state to a reasonable degree of medical probability that the conditions of employment at Arconic resulted in a hazard that distinguishes it from employment in general?

A. The answer, in general, no.

Q. Okay. So he's no different than other manufacturers or grocery stores or pharmacies or anything else like that, correct?

A. That's correct.

6

Case No. 2021-T-0052

Q. Arconic is just a run-of-the-mill place. It's not a hospital where individuals are exposed to COVID patients?

A. That's correct.

* * *

Q. Can you state to a reasonable degree of medical probability that Mr. Yeager's employment – he worked at Arconic – created a risk of contracting COVID-19, the disease, in a degree and in a different manner than the public in general?

A. Answer is yes and no, because his work environment was created to increase exposure to COVID infections because that [sic] his coworker was allowed to come in and work despite his illnesses. And that was a time that everybody's aware – afraid of the COVID infections when the person has a respiratory infection. So it's unfortunate that the coworker was allowed to come to work that increase [sic] exposure for the COVID viruses.

Q. Okay. So how does that distinguish his employment from another coworker walking into Giant Eagle that has a cough or walking into a pharmacy that has a cough or walking into any other place that has a cough?

A. Yes. So that it's unusually – so his employment not [sic] particularly increase the risk for – I mean allowed the opportunity for increase the risk for infection. But in that particular circumstances [sic], he was exposed in [sic] high-risk individual. So in general, if the patient comes into the pharmacies and transmit the virus at the pharmacies, outcome is going to be the same. The pharmacy was exposed to COVID infections during – during performing his or her occupation.

* * *

Q. Okay. So what about Arconic makes it different than a general job either in manufacturing or in grocery stores or anything else?

* * *

A. There's no – not much of a difference in general population.

7

\* \* \*

Q. So you believe some COVID-19 infections can be occupational diseases?

A. That's correct.

Q. Okay. And in Mr. Yeager's case, based on the criteria, is his COVID-19 infection an occupational disease?

A. By Industrial Commission's criteria, it is not.

Q. As we sit here today, you cannot state to a reasonable degree of medical probability that Mr. Yeager contracted COVID-19 in the course of and arising out of his employment and meets all the criteria for an occupational disease, correct?

A. That's correct.

{¶14} Because Yeager did not meet his reciprocal summary judgment burden as to the third requirement of "occupational disease," that his employment as a furnace operator creates a risk of contracting COVID-19 in greater degree and in a different manner from the public in general, the trial court did not err in granting summary judgment in favor of Arconic. Yeager's sole assignment of error is without merit.

{¶15} The judgment of the Trumbull County Court of Common Pleas is affirmed.

MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

8

Case No. 2021-T-0052