[Cite as *Wilhelm v. Advanced Drainage Sys., Inc.*, 2024-Ohio-390.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

KEVIN L. WILHELM,

       CASE NO. 5-23-16

    PLAINTIFF-APPELLANT,

  v.

ADVANCED DRAINAGE
SYSTEMS, INC., ET AL.,         **O P I N I O N**

    DEFENDANTS-APPELLEES.

**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2022-CV-00204**

**Judgment Affirmed**

**Date of Decision:  February 5, 2024**

**APPEARANCES:**

    *Daniel J. Wodarczyk* **for Appellant**

    *Mark S. Barnes* **for Appellee, Advanced Drainage Systems, Inc.**

Case No. 5-23-16

**WALDICK, J.**

{¶1} Plaintiff-appellant, Kevin Wilhelm ("Wilhelm"), appeals the May 19, 2023 judgment of the Hancock County Court of Common Pleas dismissing his complaint against defendant-appellee, Advanced Drainage Systems, Inc. ("ADS"), after the trial court granted summary judgment in favor of ADS. On appeal, Wilhelm argues the trial court erred in determining that no genuine issue of material fact existed as to whether Wilhelm was entitled to workers' compensation benefits after allegedly contracting COVID-19 at work. For the reasons that follow, we affirm.

*Procedural and Factual Background*

{¶2} On June 13, 2022, Wilhelm filed the instant action in the trial court against ADS, who was his former employer, and Stephanie B. McCloud, the CEO/Administrator of the Ohio Bureau of Workers' Compensation, appealing from a decision of the Ohio Industrial Commission denying Wilhelm's appeal to that board after Wilhelm's workers' compensation claim had been disallowed.

{¶3} Wilhelm seeks workers' compensation benefits as a result of becoming ill with COVID-19 in April of 2021. Wilhelm alleges he contracted COVID-19 at ADS, his workplace at the time and where he had been employed for over four decades. Specifically, Wilhelm asserts that he was exposed to a co-worker who tested positive for COVID-19 shortly after their interaction at work, and then Wilhelm became ill with COVID-19 a few days later. Wilhelm alleges that, during

-2-

the timeframe in question, he had limited contact with other persons and places, however he did interact with family members, visited gas stations and stores, and had contact with multiple persons at work. At the start of the COVID-19 pandemic, ADS had instituted certain protocols, which included masks, barriers, cleaning procedures, and social distancing. ADS had published its COVID-19 policies for its employees, and failure to follow the protocols could have resulted in discipline at work. Wilhelm asserts that the colleague from whom he allegedly contracted COVID-19 was not wearing a mask during their interaction, which took place in Wilhelm's office over a lunch break.

{¶4} On March 17, 2023, ADS filed a motion for summary judgment in the trial court, arguing that Wilhelm cannot as a matter of law prove that he contracted COVID-19 in the course of his employment, that Wilhelm lacks competent expert testimony in support of his medical claim, and that Wilhelm fails to satisfy the statutory three-pronged test under R.C. 4123.01 for establishing he had a compensable occupational disease.

{¶5} On April 28, 2023, Wilhelm filed a brief in opposition to ADS's motion for summary judgment. Attached to that brief were an affidavit of Wilhelm's medical expert, along with the expert's curriculum vitae, records relating to the evaluation and assessment of Wilhelm done by the medical expert's company, and a report by the expert summarizing those records.

{¶6} On May 5, 2023, ADS filed a reply memorandum in support of its motion for summary judgment. In that memorandum, ADS reiterated its position that the opinion of Wilhelm's medical expert was unreliable. ADS further argued that the affidavit submitted by Wilhelm with his brief in opposition to summary judgment was a "sham affidavit" and should be disregarded, as it contradicted the medical expert's deposition testimony and the affidavit was prepared merely to create an issue of fact.

{¶7} On May 15, 2023, the trial court filed a decision finding that ADS's motion for summary judgment was well taken and granting the same. On May 19, 2023, the trial court filed a judgment entry granting final judgment in favor of ADS and dismissing the action filed by Wilhelm.

{¶8} On June 12, 2023, Wilhelm filed the instant appeal, in which he raises four assignments of error for our review.

**First Assignment of Error**

**The trial court erred in determining that Advanced Drainage Systems, Inc. has met its burden of demonstrating that there is no genuine issue as to any material fact.**

**Second Assignment of Error**

**The trial court erred in finding that the Plaintiff-Appellant has failed to establish an issue of material fact as to whether the Plaintiff-Appellant's Covid-19 conditions constituted an occupational disease.**

**Third Assignment of Error**

**The trial court erred in application of the findings in *Yeager v. Arconic* to the present matter.**

**Fourth Assignment of Error**

**The trial court erred in determining that Advanced Drainage Systems, Inc. is entitled to judgment as a matter of law pursuant to Civ.R. 56(C).**

{¶9} To avoid unnecessary repetition in our analysis of Wilhelm's claims on appeal, we opt to collectively address the four assignments of error, all of which ultimately relate to whether the trial court erred in granting summary judgment in favor of ADS, pursuant to Civ.R. 56(C).

*Standard of Review*

{¶10} Appellate courts conduct a de novo review of trial court decisions granting a motion for summary judgment. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Thus, this Court must conduct an independent review of the evidence and arguments that were before the trial court without deference to the trial court's decision. *Tharp v. Whirlpool Corp.*, 3d Dist. Marion No. 9-17-41, 2018-Ohio-1344, ¶ 23.

{¶11} Civ.R. 56(C) provides, in relevant part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶12} "Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party." *Tharp v. Whirlpool Corp.*, *supra*, at ¶ 24, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶13} "'When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims.'" *Id.*, quoting *Lundeen v. Graff*, 10th Dist. Franklin No. 15AP–32, 2015–Ohio–4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). "Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial." *Id.*, citing *Dresher* at 293.

{¶14} "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 604 N.E.2d 138 (1992).

"Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essentials of its claim." *Id*., citing *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991), paragraph three of the syllabus.

*Legal Analysis*

{¶15} "The purpose of Ohio's workers' compensation system is to provide 'compensation to [workers] and their dependents, for death, injuries, or occupational diseases, occasioned in the course of such [workers'] employment [.]'" *Tucker v. Michael's Store Inc.,* 3d Dist. Allen No. 1-02-94, 2003-Ohio-1538, ¶ 7, quoting Section 35, Article II, Ohio Constitution; see, also, *Ruddy v. Indus. Comm.*, 153 Ohio St. 475, 92 N.E.2d 673 (1950), paragraph one of the syllabus. Pursuant to R.C. 4123.54, "every employee, who is injured or who contracts an occupational disease" in the course of employment, with some exceptions, has the right to participate in the workers' compensation system.

{¶16} "Occupational disease" is defined by R.C. 4123.01(F) as "a disease contracted in the course of employment, which by its causes and the characteristics of its manifestation or the condition of the employment results in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in greater degree and in a different manner from the public in general."

**{¶17}** Similarly, in *State ex rel. Ohio Bell Tel. Co. v. Krise*, 42 Ohio St.2d 247, 327 N.E.2d 756 (1975), the Supreme Court of Ohio set forth the definition of "occupational disease" as a three-part test:

> (1) The disease is contracted in the course of employment;
>
> (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and
>
> (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally.

*Id.*, at syllabus.

**{¶18}** In the instant case, both in the trial court and on appeal, the parties have argued extensively as to whether adequate evidentiary support exists for Wilhelm's claim that COVID-19 is a compensable occupational disease. While much of those legal arguments focus on the issue of causation and whether Wilhelm sufficiently demonstrated that he contracted COVID-19 in the course of his employment, we find – as the trial court did – that a different legal issue is dispositive in this case.

**{¶19}** Specifically, we focus our attention on the third prong of the definition of "occupational disease", which is whether "the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally."

{¶20} Wilhelm's medical expert, Dr. Dominic Haynesworth, provided the following deposition testimony, and nothing further in his deposition, with regard to the third prong of the definition of "occupational disease":

Q. * * * SARS is the virus that causes the disease known as COVID?

A. Sure.

Q. COVID. It's a disease, right?

A. This is correct. Yes.

Q. Okay. Is it your understanding that in April of 2021, which is when he tested positive, that we were still under one of the stay-at-home orders from the Department of Health that required masking, social distancing, hand hygiene in all public places and essential businesses? Do you recall?

A. April '21? Probably, yeah. That's probably correct.

Q. Okay. Do you have any information that would lead you to believe that the work environment at Advanced Drainage was any different than the environment in the public?

[WILHELM'S COUNSEL]: Object to that. But go ahead.

A. Yeah. I wouldn't have any knowledge of that, Mr. Barnes, one way or the other.

Q. Okay. And are you aware that in April of 2021, Hancock County was at a level 3 on the Department of Health's COVID risk pyramid, meaning that the risk of transmission in the county was very high? Do you recall that?

A. No. I would not have known that.

Q. Okay. And if, in fact, that was the case, you wouldn't have any reason to dispute what their risk assessment was, would you?

A. I would not.

Q. Okay. So if you assume that Advanced Drainage followed the same prevention protocols as the general public in terms of – essential business in terms of preventing COVID by masking, social distancing, hand hygiene and all of that, ventilation improvement, Mr. Wilhelm's risk of contraction of the SARS virus was no greater at Advanced Drainage than it would have been in the public setting. Isn't that true?

[WILHELM'S COUNSEL]: Objection. Go ahead.

A. Yeah. I don't know if I can draw that conclusion. I mean, I have no idea what this place is, what their history is, what the scenario is like where he has been in the room with this person, what the masking tendencies tend to be. I mean, I just couldn't draw that conclusion.

(Haynesworth Deposition, p. 61-63).

{¶21} Thus, the sum total of the evidence stemming from the deposition with respect to the third prong of the occupational disease standard was, first of all, Dr. Haynesworth's testimony that he had no knowledge, one way or another, as to whether the work environment at ADS was any different than the environment in the public generally when it came to Wilhelm's risk of contracting COVID-19. Second, when Dr. Haynesworth was asked if ADS having followed the same prevention protocols as the general public would mean Wilhelm's risk of contracting the virus was no greater at work than in the public setting, Haynesworth replied that he could not draw that conclusion but, notably, offered no opinion to the contrary. Therefore, Wilhelm failed to present any facts via his medical expert's deposition testimony that demonstrate a genuine issue for trial as to whether COVID-19 is an occupational disease in this case, specifically as to whether the

employment created a risk of contracting the disease in a greater degree and in a different manner than in the public generally.

**{¶22}** However, as noted above, Wilhelm's brief in opposition to ADS's motion for summary judgment included an affidavit from Dr. Haynesworth which supplemented his deposition testimony. That affidavit concluded with the following statement:

> Based upon my examinations of Mr. Wilhelm, it is my opinion, to a reasonable degree of medical probability, that Mr. Wilhelm's work activities at Advanced put him at a greater risk of developing Covid-19 than the public in general and in a different manner than the public in general, including but not limited to his sharing of an office that had no airflow and ventilation, with an unmask [*sic*] individual whom [*sic*] had contract [*sic*] with, and shortly thereafter tested positive for Covid-19.

(Docket No. 48, Exhibit 1).

**{¶23}** While that paragraph in Dr. Haynesworth's affidavit parrots the language of the third prong of the definition of "occupational disease" set forth in R.C. 4123.01(F) and in *State ex rel. Ohio Bell Tel. Co. v. Krise*, *supra*, "magic words" alone are not sufficient to withstand summary judgment. *Kain v. Conrad*, 139 Ohio App.3d 460, 463, 744 N.E.2d 245 (2000). *See*, *also*, *Oswald v. Connor*, 16 Ohio St.3d 38, 41, 476 N.E.2d 658 (1985).

**{¶24}** Additionally, while Dr. Haynesworth's affidavit makes reference to "an office that had no airflow and ventilation" in asserting that Wilhelm's work environment at ADS put him at a greater risk of developing COVID-19 than in the

public in general, there are no factual allegations in the record tending to establish that the airflow and ventilation in Wilhelm's office at ADS were any different from that in any other indoor setting generally.

{¶25} More importantly, in *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, the Supreme Court of Ohio specifically held that "[a]n affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment." *Id.*, at paragraph three of the syllabus. Thus, pursuant to *Byrd*, we find that the affidavit of Dr. Haynesworth submitted by Wilhelm with his brief in opposition to summary judgment must be disregarded, as it contradicted the medical expert's deposition testimony with no explanation whatsoever as to the material discrepancies between the doctor's assertions in the affidavit and his prior deposition testimony.

{¶26} Finally, we note – as did the trial court – that Ohio case law supports the proposition that common illnesses of the general public are typically not compensable as occupational diseases.

{¶27} In *Ingram v. Conrad*, 4th Dist. Athens No. 01CA36, 2001-Ohio-2641, the Fourth District Court of Appeals affirmed summary judgment granted against an employee seeking workers' compensation for pneumonia allegedly contracted in the workplace. In so doing, the court of appeals noted that pneumonia is a common

illness to which the general public is exposed. *Id*., at \*12. The Court went on to state:

> "It is not contemplated by the [workers' compensation] law makers that the law should cover health insurance. It is a matter of rather common knowledge that 'colds,' influenza and pneumonia are the result of bacteria – in common parlance, germs – attacking the body. These germs appear and cause epidemics in cities, towns, and counties. It is also a matter of rather common knowledge that many such germs appear to be in the very atmosphere surrounding us, at all times. Any and every person is 'exposed' to them without being conscious of the fact. Medical science teaches that we fall victims of these germs because at the time of the attack we are not physically able to withstand their assaults."

*Id*., quoting *Bewley v. Texas Employers Ins. Assoc.*, 568 S.W.2d 208, 210-11 (Tex.Civ.App.1978).

{¶28} More recently, in *Yeager v. Arconic Inc*., 11th Dist. Trumbull No. 2021-T-0052, 2022-Ohio-1997, the Eleventh District Court of Appeals determined that COVID-19 is also a common illness and that the workers' compensation claimant in that case had no greater degree of risk of contracting the disease at work or in a different manner than from the public in general. *Id*., at ¶ 14. The Fourth District Court of Appeals concluded that to hold otherwise "would extend the workers' compensation laws beyond their intended purpose." *Id*., at ¶ 12, citing *Ingram*, *supra*, at \*12.

{¶29} Given that a global pandemic resulted from the spread of COVID-19, and because of the insufficient assertions of fact put forth by Wilhelm in this case in support of his claim that COVID-19 is an occupational disease under these

specific circumstances, the trial court did not err in finding that there was no genuine issue of material fact with regard to Wilhelm's entitlement to workers' compensation benefits in this case.

{¶30} As summary judgment was appropriately granted to ADS, Wilhelm's four assignments of error are overruled.

*Conclusion*

{¶31} Having found no error prejudicial to the plaintiff-appellant, Kevin Wilhelm, in the particulars assigned and argued, the judgment of the Hancock County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. AND MILLER, J., concur.**

**/hls**